UNITED STATES of America,
Plaintiff–Appellee,

v.

JUVENILE FEMALE,
Defendant–Appellant.

No. 88–3118.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided March 3, 1989.

Robert Thuemmel, Thuemmel and Uhle, Portland, Or., for defendant-appellant.

Stephen F. Peifer, Asst. U.S. Atty., Office of the U.S. Atty., Portland, Or., for plaintiff-appellee.

Before SCHROEDER, POOLE and NELSON, Circuit Judges.

PER CURIAM:

Appellant, a juvenile female and member of an Indian tribe, while driving under the influence of alcohol was involved in an accident which claimed the life of a passenger in another car. She was charged in a tribal court, entered a plea and was sentenced. After she had completed a diversion program and fulfilled the terms of probation imposed by the tribal court, the United States Attorney charged her in the district court with the juvenile offense of involuntary manslaughter for the same conduct. The district court denied her pretrial motion to dismiss the charge and she now appeals.

## FACTS

On October 10, 1986, appellant, then 17 years old, drove recklessly on the Warm Springs Indian Reservation in Oregon, causing an accident which resulted in the death of a passenger in another vehicle.

The incident was investigated by the Bureau of Indian Affairs (BIA) and by the United States Attorney's Office for the District of Oregon. After a conference among the Warm Springs Chief Tribal Judge, an FBI agent and a BIA agent, the tribal court assumed jurisdiction over the case. Although interested in the case, Assistant U.S. Attorney Youngman acquiesced in this arrangement. At the time, he believed that certification of a lack of tribal jurisdiction was a necessary predicate for federal jurisdiction under 18 U.S.C. § 5032 of the Juvenile Justice and Delinquency Prevention Act.

Appellant was charged in the tribal court with two violations of the Tribal Code:

driving under the influence and recklessly endangering another person. For the first charge, she was ordered to participate in a diversion program which involved alcohol treatment, psychological counseling, community service and cultural activities. She later pled guilty to the second charge and was sentenced to probation.

Contrary to his initial opinion, the Department of Justice advised Youngman that § 5032 does not require the government to certify the absence of tribal jurisdiction before proceeding against a juvenile in district court. Believing that the incident was serious enough to warrant federal prosecution, the United States Attorney for the District of Oregon certified to the district court that the state of Oregon lacked jurisdiction over the appellant. No mention was made of Warm Springs Tribe's jurisdiction. The same day, the government filed an information charging appellant with juvenile delinquency in the commission of involuntary manslaughter. The district court's jurisdiction over the information was based on 18 U.S.C. § 1112 (manslaughter defined), § 1153 (offenses committed within Indian country) and § 5032 (delinquency proceedings in district court).

Prior to trial, appellant moved to dismiss the information on a variety of jurisdictional and constitutional grounds. The district court denied her motion and she now appeals, arguing (1) that § 5032 requires the government to certify a lack of tribal jurisdiction before it can lawfully proceed against a juvenile Indian in district court; (2) that if § 5032 is held not to require certification of lack of tribal jurisdiction, it would violate the equal protection clause; (3) that proceeding by information filed against her in district court violates her fifth amendment right against double jeopardy; and (4) that § 5032 bars this subsequent proceeding against her in federal court after the tribal court had adjudicated the same offense.

## JURISDICTION

Our jurisdiction is limited to appeals from "final decisions" of the district court

under 28 U.S.C. § 1291. Since the decision of the district court appealed from here disposed of a pretrial motion and is not a final judgment terminating the criminal proceedings, we cannot review it unless it falls within the "collateral order" exception to the final judgment rule announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ An interlocutory order falls into the class of decisions excepted from the final judgment rule by *Cohen* when three requirements are met: the order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

■ The Supreme Court has held that the denial of a motion to dismiss on double jeopardy grounds is within the "collateral order" exception to the final judgment rule. *Abney v. U.S.*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Appellant asserts that § 5032 creates a similar protection against successive prosecutions by barring federal proceedings against a juvenile after a plea has been entered or any evidence taken in *any* court. Since the denial of appellant's motion to dismiss under § 5032 raises substantially similar considerations as an appeal on double jeopardy grounds, the reasoning in *Abney* applies and the requirements of the collateral order exception are met. Thus, we have jurisdiction over the district court's rulings on the double jeopardy and statutory claims against successive prosecution as "collateral orders" which are "final decisions" for purposes of § 1291.

■ The Supreme Court also made clear in *Abney* that the courts of appeals do not gain jurisdiction over claims not otherwise appealable merely because they are raised with a double jeopardy claim. 431 U.S. at 663, 97 S.Ct. at 2042. Unless appellant's challenges to the government's certification independently meet the three requirements under *Cohen*, they cannot be appeal-

ed before a final judgment has been entered. The certification issues, however, fail to meet the third criterion necessary for the collateral order exception to apply. Appellant's challenges to the government's certification and to the constitutionality of § 5032 can easily be considered, and any error remedied, after a final judgment has been entered in the case. Thus, the certification issues are not final decisions for purposes of § 1291 and we lack jurisdiction to consider them.

## DISCUSSION

■ Appellant argues that the information filed against her in the district court violates the double jeopardy clause of the fifth amendment because jeopardy attached at the earlier tribal court proceedings concerning the same offense. This argument has already been answered by the Supreme Court in *U.S. v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), which held that double jeopardy does not bar federal prosecution after tribal prosecution because an Indian tribe and the federal government are separate sovereigns, each with an independent power to enforce its laws.

Appellant attempts to distinguish *Wheeler* from her own case by arguing that the dual sovereignty doctrine should not apply to proceedings involving juveniles. She points to the unique emphasis which the juvenile system places on rehabilitation rather than punishment to support her argument that juveniles treated under a tribal system should be protected against subsequent proceedings in federal court. Even if these arguments were considered sound as a matter of policy, they cannot give rise to a constitutional right, nor do they undermine the fundamental rationale of *Wheeler* that the double jeopardy clause does not bar independent prosecutions by both tribal and federal governments because they are separate sovereigns.

■ Appellant asserts that the federal proceedings in this case are also barred by § 5032 which provides that:

Once a juvenile has entered a plea of guilty or the proceeding has reached the

stage that evidence has begun to be taken with respect to a crime or an alleged act of juvenile delinquency subsequent criminal prosecution or juvenile proceedings based upon such alleged act of delinquency shall be barred.

Whether the tribal court's adjudication of appellant's case bars further federal proceedings against her under this section is a question of statutory interpretation, which is reviewed *de novo*. *U.S. v. Jewell*, 827 F.2d 586 (9th Cir.1987).

■ According to appellant, § 5032 bars a subsequent federal proceeding against a juvenile after entry of a guilty plea or the taking of evidence *in any court*—federal, state or tribal. This interpretation of the quoted language ignores the context in which it appears. The previous three paragraphs of § 5032 assume that proper certification has been made and discuss the circumstances under which a juvenile proceeding in district court should be transferred for federal criminal prosecution as an adult. Read in context, the above quoted paragraph is concerned with protecting a juvenile from federal prosecution as an adult after juvenile proceedings have begun in district court and vice versa. In short, § 5032 merely restates the rule of double jeopardy in the juvenile context, barring successive prosecutions by the federal government.

While the language of § 5032 does not specifically limit its application to prior proceedings in *federal* court, there is no suggestion in either the statutory language or the legislative history that it was meant to apply where a state or tribe had already proceeded against a juvenile. Given the well-established rule that the double jeopardy clause does not bar successive prosecutions by separate sovereigns, it is unlikely that Congress would have undertaken such a radical change in state-federal relations in the juvenile context without some more explicit indication of its intent.

The order of the district court is affirmed.