[No. 56053-1-I.  Division One.  December 11, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS EDWARD GAILUS, *Appellant*.

*Dana M. Lind* (of *Nielsen Broman & Koch, PLLC*), for appellant.

*Norm Maleng*, *Prosecuting Attorney*, and *Randi J. Austell* and *Dennis J. McCurdy, Deputies*, for respondent.

¶1 DWYER, J. — Following a bench trial, Thomas Gailus was convicted of 10 counts of possessing depictions of a minor engaged in sexually explicit conduct, a felony.[1] Gailus asserts that all but one of these felony convictions were barred by the Fifth Amendment's double jeopardy prohibition. Because the statute defining his criminal conduct defined the prohibited act as the possession of "matter," Gailus contends his possession of a single compact disc,

---

[1] "A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony." Former RCW 9.68A.070 (1990), *amended by* LAWS OF 2006, ch. 139, § 3.

as a tangible item, rather than the individual digital files stored on the disc, constitutes the appropriate "unit of prosecution." Alternatively, Gailus argues that the statute is ambiguous, requiring application of the rule of lenity to determine the applicable unit of prosecution. Gailus also pleaded guilty to two counts of communication with a minor for immoral purposes, a gross misdemeanor. Gailus asserts that his sentence on the gross misdemeanors is invalid, as it purports to suspend the imposition of 24 months of jail time that he actually served. We affirm his convictions but remand for resentencing on the gross misdemeanor counts.

## FACTS

¶2 On August 25, 2002, pursuant to a valid search warrant, police officers searched Gailus' premises. The officers discovered a false bottom to a bathroom vanity, underneath which they found a compact disc containing 149 separate digital files, most of which contained child pornography. Forensic examination determined that the 149 files had been copied onto the disc in eight separate sessions. Video images were contained in 148 of the files, while one file contained numerous reproductions of still images.

¶3 Gailus was charged with 10 counts of possessing depictions of a minor engaged in sexually explicit conduct, based on 12 of the digital files stored on the compact disc,[2]

---

[2] One of the charged counts was based on two separate video files, entitled "BabyJ_Captive" and "BabyJ-Flower." The prosecutor's expert witness concluded that the "two movie files" shared many features but that "it is difficult to say if it is the same female in both movie files."

Another of the charged counts was also based on two separate video files, these entitled "babyshivid_3way_06" and "babyshivid_helpless01." The prosecutor's expert witness concluded that the "two movie files" shared many features but that "it is difficult to say if it is the same female in both movie files."

In its briefing on appeal, the State explained its charging decision as being based on its belief that a single minor female was depicted in the "movie files" depicted in the former count and a different, single minor female was depicted in the "movie files" depicted in the latter count.

Each of the remaining eight counts was based on a different file depicting a different minor.

all of which contained video images. Gailus was convicted of all 10 counts of possessing depictions of a minor engaged in sexually explicit conduct in April 2005. He was sentenced to 12 months' incarceration on each count, the terms to run concurrently.

¶4 Also in April 2005, Gailus entered a guilty plea to two gross misdemeanor counts of communication with a minor for immoral purposes under domestic violence circumstances. He was sentenced to serve 12 months in jail on each gross misdemeanor count. The gross misdemeanor sentences were to run consecutively to one another and consecutively to the felony sentences. The trial court also purported to suspend 12 months of each gross misdemeanor sentence on the condition that the defendant serve 24 months in jail and complete 48 months of probation.

## DISCUSSION

### I. *Unit of prosecution*

¶5 Gailus contends that 9 of his 10 convictions for possessing depictions of a minor engaged in sexually explicit conduct must be vacated because the 12 depictions that form the bases for the 10 charges were digitally recorded onto a single compact disc and, under former RCW 9.68A.070, his possession of the disc should constitute a single "unit of prosecution." We disagree and affirm each of Gailus' 10 convictions.

¶6 The double jeopardy clause of the Fifth Amendment protects a defendant from being punished multiple times for the same offense. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995); *State v. Calle*, 125 Wn.2d 769, 772, 888 P.2d 155 (1995). When a defendant is convicted of violating one statute multiple times, the proper inquiry for double jeopardy analysis is what " 'unit of prosecution' " the legislature intended as the punishable act or course of conduct under the specific criminal statute. *State v. Adel*, 136 Wn.2d 629, 633-34, 965 P.2d 1072 (1998).

¶7 In determining the unit of prosecution for a particular statute, the court must examine the language of the statute at issue. *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005); *Adel*, 136 Wn.2d at 635. The construction of a statute is a question of law that we review de novo. *State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999). Statutes should be construed as a whole, all language used should be given effect, and related statutes should be considered in relation to each other and harmonized whenever possible. *State v. Williams*, 62 Wn. App. 336, 338, 813 P.2d 1293 (1991). Statutes should be construed to effect their purpose and to avoid strained, unlikely, or absurd consequences. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989).

■■ ¶8 Although Gailus asserts that his possession of one compact disc containing numerous files depicting minors engaged in sexually explicit conduct constitutes a single "unit of prosecution" under former RCW 9.68A.070, we conclude to the contrary.

¶9 Former RCW 9.68A.070 states that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony." RCW 9.68A.011(2) defines "[v]isual or printed matter" as "any photograph or other material that contains a reproduction of a photograph." RCW 9.68A-.011(1) defines a "photograph" as "anything tangible or intangible produced by photographing" and "[t]o 'photograph' " as "to make a print, negative, slide, digital image, motion picture, or videotape."[3]

¶10 Gailus focuses his argument regarding the applicable unit of prosecution on the phrase "[v]isual or printed matter," asserting that the word "matter" in former RCW 9.68A.070 indicates that the compact disc itself, rather than the digital images contained thereon, is the unit of prosecu-

---

[3] The legislature added the words "intangible" and "digital image" to RCW 9.68A.011 in 2002. Laws of 2002, ch. 70, § 1. This change took effect on June 13, 2002. In *State v. Cannon*, 120 Wn. App. 86, 84 P.3d 283 (2004), it was held that these changes were a part of a clarifying amendment, to be applied retroactively. In any event, the search of Gailus' abode took place on August 25, 2002, after the effective date of the amendment.

tion intended by the legislature. Several factors militate against Gailus' argument.

¶11 First, RCW 9.68A.011(2) defines "[v]isual or printed matter" as "any photograph or other material that contains a reproduction of a photograph." The images contained on Gailus' compact disc are photographs because they clearly fall within the broad category of "anything tangible or intangible" as stated in the definition of "photograph" in RCW 9.68A.011(1). In addition, the images were produced by photographing as defined in RCW 9.68A.011(1), which defines "[t]o 'photograph' " as including the making of a "digital image." Accordingly, the digital images that Gailus possessed are indisputably photographs under the statutes defining his offenses and clearly meet the statutory definition of "[v]isual or printed matter."

¶12 Second, the statutory definition of "[v]isual or printed matter" does not support Gailus' interpretation. In so determining, we apply the principle of statutory construction noscitur a sociis, which means that a word in a statute should not be read in isolation from its context. 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.16 (6th ed. 2000). The term "other material" in RCW 9.68A.011(2) appears within the statutory definition of "[v]isual or printed matter" and, therefore, must be construed in its context as defining and limiting the terms "visual matter" or "printed matter." To define a compact disc, rather than the visual images contained thereon, as "visual matter" or "printed matter" requires a strained, unlikely, and absurd reading of the statute, which we do not indulge. *Neher*, 112 Wn.2d at 351. However, digital images clearly meet the definition of "visual matter." Accordingly, we reject Gailus' assertion that the term "[v]isual or printed matter" indicates a legislative intent to define possession of a single compact disc as the unit of prosecution rather than possession of the digital photographs contained thereon. We also reject Gailus' contention that former RCW 9.68A.070 is ambiguous concerning the unit of prosecution as it applies to the charges against him.

¶13 Third, we conclude that the legislature did not intend possession of multiple photographs on a single digital storage medium, such as a compact disc or a computer hard drive, to be a single unit of prosecution.[4] As noted by a federal appellate court, the conclusion that possession of a compact disc constitutes a single unit of prosecution could lead to an absurd scenario in which an individual who possesses multiple books containing one visual depiction apiece would violate the statute multiple times, whereas an individual with hundreds of images on a hard drive or compact disc would only violate the statute once. *United States v. Vig*, 167 F.3d 443, 448 (8th Cir. 1999). Accordingly, we reject Gailus' assertion that his possession of the single compact disc, rather than the multitude of digital photographs stored thereon, constitutes the applicable unit of prosecution.[5]

¶14 Gailus next argues that if the unit of prosecution is per image, a particular video depiction could be divided

---

[4] This court has previously addressed the legislature's concern for maintaining the efficacy of these statutes in light of advances in technology. In *State v. Rosul*, 95 Wn. App. 175, 186, 974 P.2d 916 (1999), we observed that "the Legislature intended to draft the statute as broadly as possible to encompass any technology by which photographs containing child pornography could be reproduced and distributed."

[5] Citing to *State v. Huckins*, 66 Wn. App. 213, 836 P.2d 230 (1992), Gailus also argues that the State was limited to charging him with a single count of violating former RCW 9.68A.070, based on the fact that all of the images he possessed were contained in files on a single compact disc. In *Huckins*, the defendant was convicted of four counts of possessing depictions of minors engaged in sexually explicit conduct based on his possession of four different magazines. On appeal, Huckins argued that the trial court should have either given the jury a unanimity instruction or required the State to base the charges upon specific depictions within each magazine. However, this court determined that a jury instruction of the type required by *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), *modified by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988), was not necessary because the act of possessing a single magazine could not "properly be characterized as a series of several distinct acts." *Huckins*, 66 Wn. App. at 221.

However, Gailus' argument on this point is unavailing. A magazine is similar to a "video" or a "moving picture," each of which is consistent with the definition of "photograph" under RCW 9.68A.011(1), because each is unified in a manner that makes possession of a single part impracticable without possession of the whole. By contrast, digital files are easily separated, accessed, downloaded, and stored. Thus, each digital file can be separately possessed in a way that pictures within a printed publication cannot. Gailus' compact disc, by analogy, is more like a bookshelf containing many magazines than it is like a single printed publication.

frame by frame, resulting in one count being charged for each frame. However, in so arguing, Gailus misconstrues the interaction between former RCW 9.68A.070 and RCW 9.68A.011. A video digital file is akin to a "motion picture" or "videotape," each of which meets the statutory definition of "photograph." Thus, just as a person in possession of one motion picture depicting a minor engaged in sexually explicit conduct can only be convicted of a single offense, a defendant can only be convicted of a single offense for each file containing such a photograph.

¶15 Gailus also argues that the unit of prosecution should be "per minor," citing *State v. Root*, 141 Wn.2d 701, 9 P.3d 214 (2000) (unit of prosecution for sexual exploitation of minor under RCW 9.68A.040 was per photo session per minor involved in each session). However, the analysis in *Root* is inapplicable here. The statutes at issue in the instant case are dissimilar to RCW 9.68A.040 and do not reasonably suggest the interpretation urged by Gailus. In addition, such an interpretation is inconsistent with RCW 9.68A.110(5), in which the legislature expressly provides that "[i]n a prosecution under RCW . . . 9.68A.070, the state is not required to establish the identity of the alleged victim."

¶16 We conclude that each digital file containing a "photograph" as defined in RCW 9.68A.011, whether a video photograph, a "motion picture" photograph, or a still photograph, depicting a minor engaged in sexually explicit conduct, provides the basis for a single "unit of prosecution,"[6] regardless of whether the files are stored on a single

---

[6] As mentioned in footnote 2, among the charges against Gailus were two counts, one based on two separate video files that may have depicted the same minor and the other based on two different, separate video files that may have depicted the same minor (albeit a different minor from that depicted in the former count).

This charging decision is not the subject of an assignment of error on appeal, and we therefore do not express any holding as to its propriety or necessity. We do note, however, the absence of any language in the relevant statutes that would compel such a result.

We also note that, from the evidence presented, the two video files in the former count may have been segments of the same "motion picture," possessed simulta-

compact disc. Accordingly, we affirm Gailus' 10 convictions for possession of a depiction of a minor engaged in sexually explicit conduct.[7]

## II. *Sentence*

¶17 Gailus was sentenced to a total of 12 months in jail for his 10 felony convictions for possession of depictions of a minor engaged in sexually explicit conduct. Gailus also received the maximum one year sentence for each of his two gross misdemeanor convictions for communication with a minor for immoral purposes.[8] The trial court ordered that the gross misdemeanor sentences run consecutively to each other and consecutively to his felony convictions. The trial

---

neously by Gailus. Similarly, the two video files in the latter count, from the evidence presented, may have been segments of the same "motion picture" (albeit a different motion picture from that in the former count), also possessed simultaneously by Gailus.

The parties have not briefed, and we therefore do not decide, whether under such circumstances there would properly be two units of prosecution (one for each "motion picture") or four units of prosecution (one for each video file).

[7] Our resolution of this issue does not require us to decide under what circumstances, if any, the imposition of multiple consecutive sentences upon a defendant convicted of a large number of these offenses would violate constitutional prohibitions. Whereas questions concerning the applicable unit of prosecution arise from the Fifth Amendment's double jeopardy prohibition, it is the Eighth Amendment's proscription against the imposition of "cruel and unusual" punishment which prohibits the imposition of consecutive sentences that result in a cumulative sentence grossly disproportionate to the offenses and shocking to the court and the community. *State v. Davis*, 206 Ariz. 377, 388, 79 P.3d 64 (2003), *cert. denied*, 541 U.S. 1037 (2004). *Cf. State v. Berger*, 212 Ariz. 473, 134 P.3d 378, 387-88 (2006) (even though "severe and unforgiving," 20 consecutive 10-*year* sentences for 20 counts of possessing child pornography did not violate Eighth Amendment).

No court has yet determined whether the Washington Constitution's prohibition of "cruel" punishment, article I, section 14, which prohibits the imposition of punishment that is grossly disproportionate to the gravity of the offense, *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980), applies only to a review of individual sentences, as opposed to their cumulative effect. *Wahleithner v. Thompson*, 134 Wn. App. 931, 938, 143 P.3d 321 (2006). We assume, however, that in making charging determinations, prosecutors will pay heed to possible Eighth Amendment concerns in addition to concerns relating to the applicable units of prosecution.

[8] Communication with a minor for immoral purposes is a gross misdemeanor. RCW 9.68A.090. A person convicted of a gross misdemeanor "shall be punished by imprisonment in the county jail for a maximum term . . . of not more than one year." RCW 9.92.020.

court also purportedly suspended the two 12-month jail sentences on the two gross misdemeanor convictions on the condition that Gailus serve 24 months in custody and complete 48 months of probation. At sentencing, Gailus was awarded credit for 791 days in custody served prior to sentencing.

¶18 Thus, the trial court purported to suspend two consecutive 12-month jail sentences on the condition that the defendant serve 24 months in custody. Because this sentence did not actually suspend any jail time, the requirement that Gailus complete 48 months of probation was not the result of a suspended sentence and must be vacated.

¶19 The superior court's authority to suspend or defer a sentence is codified in RCW 9.95.210(1), which states:

> In granting probation, the superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, not exceeding the maximum term of sentence or two years, whichever is longer.

¶20 The imposition of probation is not authorized when the maximum jail sentence is imposed on an offender. Accordingly, we remand this matter for resentencing on the gross misdemeanor counts, in order to vacate the requirement that Gailus complete a period of probation or comply with any probationary conditions.

¶21 Finally, Gailus asserts that the consecutive one-year sentences were not authorized by RCW 9.95.210.[9] This argument is without merit. A similar argument was rejected in *Mortell v. State*, 118 Wn. App. 846, 78 P.3d 197 (2003). The decision in that case noted that such a construction of RCW 9.92.080, which pertains to situations where a defendant is sentenced on two or more consecutive gross misdemeanor convictions, would mean that a defendant

---

[9] "In the order granting probation and as a condition thereof, the superior court may in its discretion imprison the defendant in the county jail for a period not exceeding one year . . . ." RCW 9.95.210(2).

convicted of dozens of discrete, severable gross misdemeanor counts could be sentenced to no more than one year of confinement—the same maximum sentence faced by a person committing just one offense. *Mortell*, 118 Wn. App. at 851-52. The court reasoned that "[t]he legislature could not have intended such absurd results when providing for the sentencing of gross misdemeanors." *Mortell*, 118 Wn. App. at 852. We agree.

¶22 We affirm the felony convictions but remand the gross misdemeanor counts for resentencing.

BAKER and COX, JJ., concur.